THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Professional
 Wiring Installers, Inc., Randy Cochran and Denise Cochran, Respondents,
 v.
 Thomas Sims,
 III, and Communication Components, Inc., Defendants,
 of whom Thomas
 Sims, III is the Appellant.
 
 
 

Appeal From Richland County
 Joseph  M. Strickland, Master In Equity
Unpublished Opinion No. 2008-UP-173
Submitted March 3, 2008  Filed March 12,
 2008    
REVERSED and REMANDED

 
 
 
 Tucker S. Player, Esquire; Debra C. Galloway, of Columbia, for
 Appellant.
 S. Jahue Moore, of W. Columbia, for Respondents.
 
 
 

PER CURIAM: 
 Thomas Sims, III alleges the Master in Equity committed error in granting the Respondents
 (PWI) a preliminary injunction, which enjoined him from violating the terms of
 a non-compete agreement between him and PWI and in failing to require PWI to
 post a bond pursuant to Rule 65, SCRCP.  We reverse and remand.[1] 
FACTS
PWI is in
 the communications business, and Sims worked for them.  In July of 2005, PWI
 presented a non-compete agreement to Sims, which Sims signed.  The agreement
 provided: While I am employed by the Company, and for 3 years afterward, I
 will not compete with the business of the Company . . ., within a radius of 600
 miles from the present location of the Company.  Sims continued to work for
 PWI until March 10, 2006.  After his employment with PWI ended, he began
 working for Computer Components, Inc. (CCI), one of PWIs largest customers. 
 Sims performed similar services for CCI as those he previously provided CCI
 while employed by PWI.  As a result of Sims activities, PWI allegedly no longer
 received business from CCI.
On
 August 7, 2006, PWI and its owners, Randy and Denise Cochran, filed suit against
 Sims and CCI seeking monetary damages and both preliminary and permanent
 injunctive relief to enforce the terms of the agreement not to compete.  By
 order signed December 11, 2006, the Master granted a preliminary injunction
 against Sims, enjoining him from violating the employee non-compete agreement
 to the extent that he shall not solicit or attempt to solicit any business or
 trade from [PWIs] customers or clients until further Order of this Court.  The
 Master also refused to set a bond as required by Rule 65(c), SCRCP.  This
 appeal follows.    
STANDARD OF
 REVIEW
The granting of temporary injunctive relief is within
 the sound discretion of the trial court and will
 not be overturned absent an abuse of that discretion. City of Columbia v. Pic-A-Flick Video, Inc., 340 S.C. 278, 282, 531 S.E.2d 518, 520-21 (2000).
 An abuse of discretion occurs when a trial courts decision is unsupported by
 the evidence or controlled by an error of law. County of Richland v. Simpkins, 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct. App. 2002).
LAW/ANALYSIS
The
 Supreme Court of South Carolina recently addressed injunctive relief:

 The power of
 the court to grant an injunction is in equity. The court will reserve its
 equitable powers for situations when there is no adequate remedy at law. The
 party seeking an injunction has the burden of demonstrating facts and
 circumstances warranting an injunction. The remedy of an injunction is a
 drastic one and ought to be applied with caution. In deciding whether to grant
 an injunction, the court must balance the benefit of an injunction to the
 plaintiff against the inconvenience and damage to the defendant, and grant an
 injunction which seems most consistent with justice and equity under the
 circumstances of the case. 
 For a preliminary injunction to be granted, the plaintiff must establish
 that (1) it would suffer irreparable harm if the injunction is not granted; (2)
 the party seeking injunction will likely succeed in the litigation; and (3)
 there is an inadequate remedy at law. 

 Strategic Resources Co. v. BCS Life Ins. Co., 367 S.C. 540, 544, 627
 S.E.2d 687, 689 (2006) (internal citations omitted).  This court has also
 addressed injunctive relief, noting: 

 [i]t is well settled that, in determining whether a
 temporary injunction should issue, the merits of the case are not to be
 considered, except in so far as they may enable the court to determine whether
 a prima facie showing has been made. When a prima facie showing has been made
 entitling plaintiff to injunctive relief, a temporary injunction will be
 granted without regard to the ultimate termination of the case on the merits.

 MailSource, LLC v. M.A. Bailey & Assocs., 356 S.C. 363, 368, 588
 S.E.2d 635, 638 (Ct. App. 2003) (internal citations omitted).
We are aware that in determining whether a temporary
 injunction should be granted, the merits of the case should not be considered beyond
 determining whether a prima facie showing has been made.  However, as noted by
 the Supreme Court in Strategic Resources, the party seeking injunctive
 relief must establish it will likely succeed on the merits.  Accordingly, we
 review whether PWI has made a prima facie showing of the likelihood of succeeding
 on the merits.  Following our review, we have concluded that PWI failed to make
 this showing.    This
 Court addressed the enforceability of covenants not to compete in Faces
 Boutique, Ltd. v. Gibbs, where we stated:

 Covenants
 not to compete contained in employment contracts are generally disfavored and
 will be strictly construed against the employer.  A restriction against competition must be narrowly drawn to
 protect the legitimate interests of the employer.  A covenant not to compete
 will be upheld only if it is:
 (1) necessary for the protection of the legitimate
 interest of the employer;
 (2)
 reasonably limited in its operation with respect to time and place;
 (3) not
 unduly harsh and oppressive in curtailing the legitimate efforts of the
 employee to earn a livelihood;
 (4)
 reasonable from the standpoint of sound public policy; and
 (5)
 supported by valuable consideration.
 Moreover, each case concerned
 with the enforceability of covenants not to compete contained in employment contracts
 must be decided on its own facts. If a covenant not to compete is defective in
 one of the above referenced areas, the covenant is totally defective and cannot
 be saved.

318 S.C. 39, 41-42, 455 S.E.2d 707, 708-09 (Ct.
 App. 1995) (internal citations omitted).
In
 the case sub judice, we are troubled by the broad geographical scope and effective
 time period of the non-compete agreement.  The terms of the agreement restrict
 Sims business activities within a 600 mile radius of Lexington, South Carolina, for three years following the completion of his employment with PWI.  The
 agreement, if enforceable, would bar Sims business activities in thirteen
 states fully and in parts of nine other states.  While the agreement bars Sims
 activities in at least part of twenty-two states, PWI only conducted business
 in five states.  For these reasons, we are doubtful of the enforceability of
 this agreement.  See  Poole v. Incentives Unlimited, Inc., 345 S.C. 378, 548 S.E.2d 207 (2001) (holding that a covenant not to compete is
 enforceable if it is not detrimental to the public interest, is reasonably limited as to time and territory, and is supported by valuable
 consideration).  
To be entitled to injunctive relief, PWI must establish it would
 suffer irreparable harm without such relief.  We find no such showing.  Generally,
 pure economic loss is not sufficient to satisfy the requirement of showing an
 irreparable harm where an adequate remedy is available at law.  See MailSource, LLC,
 356 S.C. at 370, 588 S.E.2d at 639 (stating the general rule is that an
 injunction should be granted only where some irreparable injury is threatened
 for which there is no adequate remedy at law).  However, this Court has recognized an irreparable harm
 where economic loss threatens the plaintiffs business as a whole. See Peek v. Spartanburg Regional Healthcare System, 367 S.C. 450, 455-56, 626 S.E.2d 34,
 37 (Ct. App. 2005) (holding the complete loss of a professional practice
 can be an irreparable harm).  
PWI
 failed to allege any irreparable harm arising from Sims business activities.  Randy Cochran, one of PWIs owners and its president, testified PWI
 no longer conducted business with CCI, one of its largest customers, as a
 result of Sims activities.  Cochran alleged the lost business represented
 approximately thirty percent of PWIs overall business.  However, PWI failed to
 allege or present any evidence that Sims activities could cause the complete
 loss of business for PWI.  
The
 only allegation of irreparable harm in this case is contained in the
 non-compete agreement itself.  The agreement states: 

 3. 
 Injunctive Relief.  I acknowledge and
 agree that in the event of a violation or threatened violation of any
 provisions of this agreement, the Company will sustain irreparable harm and
 will have the full right to seek injunctive relief, in addition to any other
 legal remedy available, without the requirement of posting bond.

We are not satisfied that language
 in the challenged agreement alone constitutes a sufficient showing of
 irreparable harm, particularly when considering the overly broad scope of the
 agreement.  See Faces Boutique, Ltd. 318 S.C. at 42, 455 S.E.2d
 at 709 (holding: If a covenant not to compete is defective in one . . . area[],
 the covenant is totally defective and cannot be saved.).  Accordingly, we find
 the Master erred in finding PWI had satisfied the requirement of showing
 irreparable harm, and therefore, the preliminary injunction should not have
 been granted. 
Sims also claims the Master committed error in failing to require
 PWI to pay a bond pursuant to Rule 65(c), SCRCP.  We agree.  

 Rule 65(c), SCRCP, provides:
 
 no restraining order or temporary
 injunction shall issue except upon the giving of security by the applicant, in
 such sum as the court deems proper, for the payment of such costs and damages
 as may be incurred or suffered by any party who is found to have been
 wrongfully enjoined or restrained.
 

PWI argues the deems proper
 language of Rule 65, SCRCP, provides the Master with discretion to set no bond
 at all.  PWI also argues the language of the non-compete argument, which states
 PWI has a right to seek injunctive relief without the requirement of posting
 bond, justifies the Masters refusal to set bond.  We are not persuaded by
 either argument.    
In Atwood Agency
 v. Black, 374 SC 68, 646 S.E.2d 882, (2007), the Supreme Court of
 South Carolina recently addressed the issue of the discretion provided to trial
 courts by Rule 65, SCRCP.  Atwood Agency is a vacation rental business on Edisto Island, South Carolina.  Elaine Shaw was employed by Atwood Agency for fifteen
 years.  When Shaws employment with Atwood Agency ended, she went to work for
 another vacation rental business, Edisto Sales and Rental Realty, Inc.  Atwood Agency
 filed suit against Shaw and her new employer.  The circuit court granted Atwood
 Agency a temporary injunction, restraining Shaw and her employer from
 contacting or contracting with Atwoods clients.  The court set bond in the
 amount of $250.  
Shaw
 and her employer challenged the underlying temporary injunction and argued the
 amount of bond was inadequate.  The Supreme Court reversed and remanded, explaining:
 [t]he circuit courts order requiring only a nominal security bond does not
 satisfy Rule 65(c) because it erroneously assumes the injunction is proper
 instead of providing an amount sufficient to protect appellants in the event
 the injunction is ultimately deemed improper.  374 SC 68, 78, 646 S.E.2d 882,
 884.  The Supreme Court ruled Shaw and her employer had been improperly
 enjoined and remanded the matter back to the circuit court to award the
 appropriate amount of costs and damages incurred as a result of the temporary
 injunction. Id. 
We find that if
 setting nominal bond is not within the discretion of the trial court, setting
 no bond is likewise beyond the trial courts discretion.  Furthermore, to allow
 the language of the non-compete argument to control whether a bond is required
 would impose the same flawed reasoning upon Sims as that rejected in Atwood:
 to erroneously assume[] the injunction is proper instead of providing an
 amount sufficient to protect appellants in the event the injunction is
 ultimately deemed improper.  Id. 
CONCLUSION
For the reasons
 stated above, we reverse the Masters grant of a preliminary injunction and
 remand the matter back to the Master for further proceedings to determine if
 Sims has incurred any cost or suffered any damages as a result of the improper
 injunction and to award appropriate relief.  Accordingly, the order of the
 Master is
REVERSED and
 REMANDED.
ANDERSON, SHORT,
 and THOMAS JJ., concur. 

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.